```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON

_____x
                              :
UNITED STATES OF AMERICA,     :   Criminal Action
                              :
            Plaintiff,        :   No. 2:12-cr-00207
                              :
v.                            :
                              :   Date: November 15, 2017
PATRICK WARREN NAPIER,        :
                              :
            Defendant.        :
_____x
```

TRANSCRIPT OF SUPERVISED RELEASE REVOCATION HEARING
HELD BEFORE THE HONORABLE THOMAS E. JOHNSTON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
IN CHARLESTON, WEST VIRGINIA

APPEARANCES:

For the Government:         AUSA JOSHUA C. HANKS
                            U.S. Attorney's Office
                            P.O. Box 1713
                            Charleston, WV  25326-1713

For the Defendant:          GREGORY J. CAMPBELL, ESQ.
                            Campbell Law Offices
                            Suite 300
                            105 Capitol Street
                            Charleston, WV 25301

Probation Officer:          Jeff Bella


Court Reporter:             Ayme Cochran, RMR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.

1     PROCEEDINGS had before The Honorable Thomas E.
2 Johnston, Judge, United States District Court, Southern
3 District of West Virginia, in Charleston, West Virginia, on
4 November 15, 2017, at 2:00 p.m., as follows:
5     COURTROOM DEPUTY CLERK: The matter before the
6 Court is the United States of America versus Patrick Napier,
7 criminal action number 2:12-cr-00207-3, scheduled for a
8 revocation hearing.
9     THE COURT: Good afternoon. Will counsel please
10 note their appearances?
11     MR. HANKS: Good afternoon, Your Honor. Josh
12 Hanks on behalf of the United States.
13     MR. CAMPBELL: Gregory Campbell on behalf of the
14 defendant, Patrick Napier, who is present here in the
15 courtroom, Your Honor.
16     THE COURT: Good afternoon. Is it Napier or
17 Napier?
18     THE DEFENDANT: Napier.
19     THE COURT: Alright. Mr. Napier, I will ask the
20 deputy clerk to administer an oath to you at this time.
21     COURTROOM DEPUTY CLERK: Please raise your right
22 hand.
23     **PATRICK WARREN NAPIER, DEFENDANT, SWORN**
24     THE COURT: You may be seated.
25   Mr. Napier, do you understand that you are now under

*Ayme A. Cochran, RMR, CRR (304) 347-3128*

1  oath and, if you answer any of my questions or otherwise
2  testify falsely, your answers may later be used against you
3  in another prosecution for perjury or for making a false
4  statement?
5          THE DEFENDANT:  Yes, sir.
6          THE COURT:  I note for the record that the
7  defendant's probation officer, Mr. Jeffrey Bella, is also
8  present in the courtroom.
9      On November 4th, 2013, Mr. Napier was sentenced to a
10 term of 48 months imprisonment, followed by a three-year
11 term of supervised release for his conviction of conspiracy
12 to distribute Oxycodone in violation of 21 U. S. C. Section
13 846.  Mr. Napier was released from custody on June 22nd,
14 2016 and began serving his term of supervised release on
15 that date.
16     On September 14th, 2017, Mr. Napier's probation officer
17 filed a Petition for a Warrant or Summons for Offender Under
18 Supervision against Mr. Napier charging him with violating
19 certain conditions of his supervised release.  The
20 violations are alleged in the petition.
21     Further, on October 5th, 2017, Mr. Napier's probation
22 officer filed an amendment to the petition against Mr.
23 Napier charging him with violating additional conditions of
24 his supervised release and those additional violations are
25 alleged in that amendment.

1    Mr. Napier, have you received a written copy of the
2    petition and the amendment setting forth the alleged
3    violations of your term of supervised release?
4          THE DEFENDANT:  Yes, sir.
5          THE COURT:  And have you read the alleged
6    violations?
7          THE DEFENDANT:  Yes, sir.
8          THE COURT:  And have you reviewed them with your
9    attorney?
10         THE DEFENDANT:  Yes, sir.
11         THE COURT:  And do you understand the allegations
12   set forth in the petition and the amendment?
13         THE DEFENDANT:  Yes, sir.
14         THE COURT:  You don't need to stand unless I
15   indicate otherwise.
16         MR. CAMPBELL:  I just -- I'm just not used to it,
17   Judge.  I'm sorry.
18         THE COURT:  I'm just looking for some answers
19   here.
20         THE DEFENDANT:  Sorry about that.
21         THE COURT:  Let me ask that last question again.
22   Do you understand the allegations set forth in the petition
23   and the amendment?
24         THE DEFENDANT:  Yes, sir, I do.
25         THE COURT:  Alright.  And, Mr. Campbell, has the

1    evidence against Mr. Napier been disclosed?
2             MR. CAMPBELL:  Yes, sir, it has.
3             THE COURT:  Mr. Napier, do you understand that if
4    I determine that you have violated the terms and conditions
5    of your supervised release, under the United States
6    guidelines, I may revoke, extend or modify your term of
7    supervised release?
8             THE DEFENDANT:  Yes, sir, I do.
9             THE COURT:  And do you admit or deny the
10   allegations contained in the petition and the amendment?
11            THE DEFENDANT:  I do not deny them.
12            THE COURT:  Well --
13            THE DEFENDANT:  I admit.
14            THE COURT:  You admit them?
15            THE DEFENDANT:  Yeah.
16            THE COURT:  All of them?
17            THE DEFENDANT:  Yeah.
18            THE COURT:  Yes?
19            THE DEFENDANT:  Yes, sir.
20            THE COURT:  Alright.  Very well.
21       Alright.  Now, at this point, Mr. Campbell, I
22   understand you have an alternative that you would like to
23   propose?
24            MR. CAMPBELL:  Your Honor, I would like to -- the
25   Court to hold the petition in abeyance, continue the matter

1  generally. I have -- not me. Mr. Bella has basically
2  secured a bed at Recovery Point in Huntington for the
3  long-term program. I provided Mr. Yoches with an outline of
4  that program.
5        THE COURT: I'm very familiar with Recovery Point.
6        MR. CAMPBELL: Well, Judge, I was not and it took
7  me a little bit to get up to speed. I appreciate the Court
8  continuing this because I just hadn't had a case where it
9  came up. I would like to see Patrick get into it, get into
10 the program. He expressed to me, Judge, earlier on one of
11 my jail visits with him that he would like to get into one
12 of the programs.
13     I -- Judge, I made a mistake. I -- there was -- in the
14 petition, there's a mention that a weapon was found in the
15 home where -- or one of the houses where Mr. Napier was. It
16 was inoperable, I believe, but still, in the guidelines, it
17 indicated that perhaps he wouldn't be eligible for anything
18 other than incarceration.
19     And then, at some point, it dawns on me that the
20 guidelines are no longer mandatory. I started checking into
21 alternative sentences or activities that could be imposed.
22 I asked Mr. Napier, and he expressed to me that he would
23 like to get in a long-term program, as opposed to a
24 short-term program.
25     He was hoping that he might be able to get something in

1  Ohio.  His mother, Ms. Patierno, Cathy Patierno,
2  P-a-t-i-e-r-n-o, was -- lives in Ohio, was seeking to find
3  places for him.  Judge, she's highly motivated.  She has
4  provided a lot of support for him.  Mr. Napier is unlike
5  most of my clients.  He has a great support group and people
6  willing to help him.
7      We were unable to find anything in Ohio, but we --
8  through Mr. Bella, we were able to get something at Recovery
9  Point.
10      He -- the letter that I received from Mr. Litz
11  indicates that there would be a bed open today until 1:00
12  and tomorrow until no later than 1:00.  So, my intent, like
13  I say, is to ask the Court to hold the petition in abeyance,
14  continue the matter generally, either order that the
15  marshals deliver him to Recovery Point, or the Court -- Ms.
16  Patierno and her husband have agreed to accept custody and
17  would agree to have him to Recovery Point before noon
18  tomorrow.  I would advise Mr. Litz what the plan is and keep
19  the Court advised through the clerk.  So --
20          THE COURT:  Alright.  Well, first of all, I'm very
21  familiar with Recovery Point and I think it's a very good
22  program.  And I have sent a number of defendants to Recovery
23  Point.  I think that it has a -- in the grand scheme of
24  things, it has a pretty good success rate.  It is a very
25  rigorous program, though, and it is one of the longer-term

1    programs that we have available to us.
2         Based on my review of the file, I think that the
3    defendant can benefit from it.
4         Does the Government have any objection to that?
5              MR. HANKS:  Your Honor, I don't think anyone would
6    object to the defendant getting treatment.  You know, I
7    think that, in large part, I think that the defendant's
8    conduct while on supervision is more -- you know, the Court
9    is sort of the victim in the sense that it's a betrayal of
10   the Court's trust.  So, you know, if Your Honor believes
11   that it's appropriate to do the treatment now rather than do
12   revocation now and treatment later, I understand that, but I
13   do think the conduct would warrant revocation on the front
14   end, but at the same time, I understand that these addiction
15   issues are very complicated and I hesitate to weigh in.  I
16   don't want to say it that way because I don't have any
17   problem advocating a position, but I don't -- I hesitate to
18   get in over my head and try to, you know, determine when
19   treatment is better or not.  So, all of that to say I do not
20   object to treatment.
21        On the matter of holding in abeyance, the question I
22   would have is, would the Court consider holding in abeyance
23   sort of the first go-around, as the Court's practice is, is
24   to sort of help someone or give them a break on the front
25   and if there's a second revocation, that's when more

1   strenuous punishments and things are applied.  I was just
2   curious about that part of it because, if that's the case, I
3   don't object at all to him getting treatment now, with the
4   understanding that if we come back, it's as if it's the
5   second time around.
6              THE COURT:  Well, that is my practice, so -- and
7   that's what I intend to do in this case.
8         Mr. Bella, you're on board with this because you set it
9   up, right?
10             PROBATION OFFICER BELLA:  Yeah.  Mr. Campbell
11  asked for assistance in finding a bed, so I located a bed
12  for him.  You know, I tried to get him in treatment numerous
13  times while he was on supervised release and just couldn't
14  get him there.  I would probably prefer the revocation first
15  with treatment on the back end just for the amount of
16  violations that he has.  But, yes, I'm definitely open for
17  him going to treatment.
18             THE COURT:  Alright.  Well, where is the defendant
19  currently housed?
20             MR. CAMPBELL:  South Central.
21             THE COURT:  Alright.  Alright.  So, here's what
22  I'm going to do.  I'm going to go ahead and hold the
23  petition in abeyance and enter an order sending him to
24  Recovery Point, which will include that he abide by all the
25  rules and regulations of the facility and successfully

1  complete the program.
2      I -- he's already been in custody for almost two months
3  and his guidelines are fairly low. So, I don't see any
4  benefit to revoking him at this point, as opposed to just
5  holding it in abeyance and modifying his supervised release
6  conditions. That also allows me to hold this whole thing
7  over his head. So -- and with the following warning:
8      Mr. Napier, what Mr. Hanks hinted at is correct. This
9  is not an unusual result on a first revocation before me,
10 especially when it's obvious that the defendant has a drug
11 problem. So, a short period of incarceration, the
12 opportunity for inpatient drug treatment, or some
13 combination of the two is the typical result.
14     On a second petition, if you're back before me again
15 either because you've gotten thrown out of Recovery Point or
16 because you've otherwise violated the terms and conditions
17 of your supervised release, in all likelihood, if I find
18 that you violated again, I'm going to give you the statutory
19 maximum, which I think in this case is --
20         MR. CAMPBELL: 24 months.
21         THE COURT: I believe it's 24 months, yeah. So, I
22 provide that information as fair warning and, also, as an
23 additional incentive for you to take seriously the Recovery
24 Point program and, going forward, the conditions of
25 supervised release under which you have to live.

1       And -- but based on your history, it appears to me that
2   this program could be beneficial for you.  It's not an easy
3   program.  It's a tough program.  But that's one of the
4   reasons I can I think it succeeds where other others may
5   not.  It's a rigorous program.
6       So, I encourage you to take it seriously, take
7   advantage of it, use as an opportunity to put your addiction
8   issues behind you and move forward with your life.
9       I also hope you'll take advantage of it because, if you
10  don't, you're taking up bed space that somebody else -- in
11  this day and age with the opioid crisis, somebody else could
12  use.  So, I'll go ahead and enter an order to that effect.
13      I will -- they want him at Recovery Point by 1:00
14  tomorrow?
15              MR. CAMPBELL:  By no later than 1:00.
16              THE COURT:  By no later than 1:00?  Alright.
17  Well, what I will do then is, I will include in the order
18  that he be released from custody at the South Central
19  Regional Jail at 10:00 a.m. to the custody -- to his mother
20  to be transported from South Central to Recovery Point in
21  Huntington without any stop or delay or detour in the
22  morning.
23      Alright.  Anything else we need to take up in this
24  case?
25              MR. HANKS:  No, Your Honor.

1    MR. CAMPBELL: No, Your Honor. Thank you, sir.
2    THE COURT: Alright. The defendant will be
3    remanded to the custody of the marshals pending my order and
4    this Court stands adjourned.
5    (Proceedings concluded at 2:07 p.m., November 15, 2017.)
6
7    CERTIFICATION:
8    I, Ayme A. Cochran, Official Court Reporter, certify
9    that the foregoing is a correct transcript from the record
10   of proceedings in the matter of United States of America,
11   Plaintiff v. Patrick Warren Napier, Defendant, Criminal
12   Action No. 2:12-cr-00207-3, as reported on November 15,
13   2017.
14
15   s/Ayme A. Cochran, RMR, CRR                    June 24, 2020
16   Ayme A. Cochran, RMR, CRR                     DATE
17
18
19
20
21
22
23
24
25